WEINBERG v. STRATTON.

1. ASSIGNMENTS—PAYMENT—DEBTOR AND CREDITOR—EVIDENCE—HEARSAY.

Where a debtor delivered to his creditor an order on his employer to pay his wages to the creditor until further notice, and after the creditor had received a part of his claim, the debtor gave notice that he withdrew the order, and the creditor, learning of the attempted withdrawal of the assignment, notified the employer of the amount of his claim; evidence was admissible to show conversation constituting the alleged assignment, which, it was claimed, included future earnings up to the amount of plaintiff's claim, although the defendant was not present at the time, and received no information concerning it except the notice.

2. SAME.

While any payments made by the employer to the debtor before the notice were valid, he would be liable for amounts paid after he received notice of the extent of plaintiff's claim under the assignment.

Error to Cheboygan; Shepherd, J. Submitted June 23, 1910. (Docket No. 136.) Decided December 7, 1910.

Assumpsit by Max H. Weinberg against De Forest A. Stratton upon an assignment of indebtedness. Judgment for defendant and plaintiff brings error. Reversed.

*M. W. Benjamin,* for appellant.

*Charles R. Henry,* for appellee.

HOOKER, J. Charles Warren was indebted to the plaintiff, and as an inducement for further credit, gave to him an order upon defendant, who was Warren's employer. It read as follows:

"TOWER, March 13, 1908.

"D. A. STRATTON:

"Please pay my wages to Max H. Weinberg hereafter until further notice.

"CHARLES WARREN."

The order was delivered to defendant who accepted it. Defendant has paid to plaintiff all of Warren's wages up to January 4, 1909, when he was served with the following writing signed by Warren:

"TOWER, MICH., Jan. 4th, 1909.
"D. A. STRATTON:
"I hereby withdraw any order given by me for my wages which was given prior to January 1st, 1909.
"CHARLES WARREN."

And this was accepted.

On January 15, 1909, plaintiff, having learned that Warren had countermanded the order, caused the following notice to be served on defendant:

"TOWER, MICHIGAN, Jan. 15, 1909.
"D. A. STRATTON,
    "Tower, Michigan.
"*Dear Sir:* Assignment of wages which Charles Warran gave me on you, and which you accepted in writing last summer, was in the following form:

"'D. A. STRATTON:
"'Please pay my wages to Max H. Weinberg until otherwise ordered withdrawn by him.
[Signed]         "'CHARLES WARREN.'

"Under this order I wish to notify you that I am entitled to all his (Charles Warren's) wages until my account is fully paid.  The balance he still owes me is $57.00, and I will hold you personally responsible if you turn over that or any other amount to any other person excepting myself, and I hereby notify you to that effect.
"Respectfully,
"MAX H. WEINBERG."

After the 4th of January, 1909, Charles Warren earned and received checks for his wages as follows:

| | |
|---|---|
| Jan. 9, 1909 | $20 00 |
| Jan. 23, 1909 | 16 95 |
| Feb. 6, 1909 | 23 00 |
| Feb. 20, 1909 | 14 75 |
| Mar. 6, 1909 | 23 40 |

—no part of which was applied by the said Charles War-

ren on his (Warren's) indebtedness to said Max H. Weinberg.

Plaintiff sued and recovered a judgment in justice's court against defendant for the balance of his claim against Warren, some $57. Defendant appealed to the circuit court where the cause was tried without a jury, and the case is before us on exception to the findings of law. The findings of fact were in substantial harmony with the foregoing statement, and the findings of law were as follows:

"**Conclusions of Law.** (1) When Warren, on January 4, 1909, served upon the defendant the withdrawal of the order of date March 13, 1908, the plaintiff had no further claim on defendant for the wages of Warren.

"(2) At the time of the commencement of this suit the defendant was not indebted to the plaintiff in any amount whatever.

"(3) The defendant did not undertake and promise said plaintiff as in his declaration alleged.

"(4) That a judgment of no cause of action be entered in favor of the defendant and against the plaintiff, and that defendant recover his costs and charges by him about his suit in this behalf expended.

"FRANK SHEPHERD, Circuit Judge."

Plaintiff has appealed from a judgment of no cause of action. Error is assigned upon the foregoing exceptions, and also to the exclusion of certain testimony. Upon the trial the parties presented the following stipulation:

" It is hereby stipulated and agreed by and between the attorneys for the respective parties in the above-entitled cause, that the foregoing stipulated facts, except as otherwise stated, are the facts in this case. Both the parties, however, reserving the right to produce witnesses for the purpose of showing the conversation between plaintiff and Charles Warren on the 11th day of March, 1908, preceding the giving of the order dated March 13, 1908, and that the court shall make a finding of facts as to what that conversation was, which, in addition to the agreed facts herein set forth, shall constitute the facts in this case."

The following then occurred:

"Max H. Weinberg (sworn), examined by Mr. Benjamin:

"*Q.* You are the plaintiff in this case?

"*A.* Yes, sir.

"*Q.* Do you remember about the time that Charles Warren gave you the order on Mr. Stratton, upon which the suit is in this case?

"*A.* I do; yes, sir.

"*Q.* Was there any conversation with Mr. Warren previous to the giving of that order?

"*A.* Yes, sir.

"*Q.* When and where?

"*A.* In the store—in my place of business.

"*Q.* In Tower?

"*A.* In Tower; yes, sir.

"*Q.* Who was present besides yourself and Mr. Warren?

"*A.* Jonas ———.

"*Q.* What was the conversation?

"*Mr. Henry:* Now, your honor, I desire to object to this. The court has read the facts which have been agreed upon by counsel and myself. We could not agree upon what this conversation was. Therefore the one point upon which we agreed to take testimony is upon that point. But I regard the conversation, whatever it may have been, as wholly immaterial. While the case is being heard before the court, perhaps it might not make so much difference, yet I desire to save the point. Here is a conversation in which Mr. Stratton was not present and not a party to. We maintain that, in so far as the issue is concerned, it is entirely immaterial. Mr. Warren is not the defendant in this case—Mr. Stratton is the defendant; and therefore, to all of this, I desire to interpose our objection.

"*Mr. Benjamin:* We claim that under the stipulation in this case we are entitled to show this conversation.

"*The Court:* Well, suppose you do, what difference does it make, if it is immaterial?

"*Mr. Benjamin:* It is not immaterial. It shows the exact conditions for which this order was given. It is not to vary the terms of the instrument that we put it in, but just to show the purpose for which it was given; and that would be perfectly competent. For instance, your honor, a man giving a deed for a certain piece of property, as a mortgage, as security for an indebtedness, you would have

a right to show it was given as security. In the same way, we would have a right in this case to show that this order was given as security for a certain indebtedness.

"*The Court:* That is not the point that Mr. Henry makes. The point Mr. Henry makes is that it is a conversation with a person who is a stranger to this suit.

"*Mr. Benjamin:* Mr. Warren is not a stranger. Mr. Warren, we claim, makes an assignment of his wages— he is working for Mr. Stratton—employed by him. He makes an assignment of his future wages to Mr. Weinberg as security for past indebtedness and also future indebtedness; and then this order is afterwards taken to Mr. Stratton and is accepted by his agent. Now the fact that a man makes an assignment that, of itself, is complete, without a third party being present.

"*The Court:* Any conversation that Mr. Weinberg may have had with Mr. Warren will not bind Mr. Stratton, except as it was communicated to Mr. Stratton.

"*Mr. Benjamin:* I am trying to show the assignment of the claim—the whole arrangement. Now, what difference does it make whether Mr. Stratton was there or not?

"*The Court:* Because you delivered to Mr. Stratton just what you did deliver, and that is all he is bound by —what he had notice of. If you delivered something that was not an assignment on the face it, and he was not notified any differently, then he is only bound by what he received. Any instrument that was delivered to him, he had a right to believe contained all there was.

"*Mr. Benjamin:* We have a right, I think, to show the terms of the instrument. It is ambiguous—it simply says: 'Pay my future wages to Max H. Weinberg until further notice.' Now, 'further notice,' what does that mean?

"*The Court:* Well, we are bound by that, I think, in this controversy.

"*Mr. Benjamin:* A man assigns a claim to another party. Well, the assignor has no further rights as to that claim. He can't do any act afterwards that will defeat his assignment. Now, you might say, that being so, that 'until further notice' would mean then the notice by the party who has the assignment. Now, what we want to show by this conversation is as to how long this order was to hold good.

"*The Court:* The order itself shows that—'Until further notice.'

"*Mr. Benjamin:* I want to show what was meant by that.

"*The Court:* Why, isn't that plain enough? Until Mr. Stratton was notified otherwise. I am afraid it would be error to admit it, if the decision should go in your favor. It might be reversed.

"*Mr. Benjamin:* We will take an exception to the ruling of the court, then, under that view of it."

We understand plaintiff's claim to be that this conversation, had it been shown, would have established an oral assignment by Warren to plaintiff of all his wages, earned and to be earned from the defendant under his existing employment, until the amount then owing or that should thereafter accrue to plaintiff should be paid in full. The plaintiff asserts that he had, and offered, testimony that would show that Warren's agreement amounted to an assignment of his wages to be thereafter earned, until his indebtedness to plaintiff, prospective as well as that already incurred, should be paid. If this is true, plaintiff was entitled to receive the same whether defendant was present or had notice of the assignment or not, for any one may assign a credit without consulting his debtor. 4 Cyc. p. 17, and note; *Id.* pp. 32, 34. The question involved in this offer was whether a valid assignment of wages was made by Warren to plaintiff; and this might be whether defendant consented or not, and whether he was a party to the talk or not. It is not a question of promise on his part to pay Warren's debt, but a question as to who was the owner of his obligation to pay. It is possible that he may have had a defense to such claim— *i. e.*, that he had paid in ignorance of the assignment— but that is another matter. The learned circuit judge should have admitted the testimony in accordance with the stipulation.

BLAIR, J. Assuming that plaintiff would have shown, if permitted, an oral assignment by Warren to plaintiff of all his wages, earned and to be earned, from the defendant under his existing employment until the amount then

or thereafter owing should be paid, I think the court correctly held that such showing would be immaterial.

The plaintiff notified the defendant, in substance, that the only assignment he had was the written assignment accepted by defendant in writing. This assignment was clearly terminable, in unambiguous terms, by Warren. Defendant, under Weinberg's notice, had a right to rely upon the written assignment as measuring the rights of the parties, and plaintiff was estopped to claim that there was any different assignment. The plaintiff having assured defendant that the written assignment was the only assignment, and this assignment having been lawfully terminated by Warren, defendant had a right to make the payments to Warren for the recovery of which this suit is brought.

I think the judgment should be affirmed.

STONE, J., concurred with BLAIR, J.

### SUPPLEMENTAL OPINION.

HOOKER, J. I agree with Mr. Justice BLAIR that the plaintiff cannot recover any sum that was paid by defendant in reliance upon the notice given by his debtor, before he was notified that plaintiff claimed to be entitled to his wages up to $57. Payments made after that, if any, would be at defendant's own peril. But we do not know that he so paid any, except that due prior to January 15th, on which he knew that plaintiff claimed them. He could not say that he made subsequent payments in ignorance of plaintiff's claim that he was entitled to them. It was proposed to show that he was so entitled. If he was, they were his, and to say that he lost such ownership because he said he claimed them under the order is not an answer to his claim. Defendant had been served with an order, which this notice showed that plaintiff claimed was intended to give him further rights. Defendant's duty to pay plaintiff was not limited by the order he accepted if in fact plaintiff bought the claims as he offered to show.

If that had been proved, the only defense would have been payment in ignorance of plaintiff's claim. As I have intimated in this opinion, that would have been a complete defense. If no notice whatever had been served by plaintiff, and defendant still had the money, could he say: It is true I have this money, and it is yours, as between your debtor and yourself, but you made a mistake in the order I accepted, and I am not obliged to pay you. Evidently this would be no answer.

The judgment is reversed, and a new trial ordered.

BIRD, C. J., and OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred with HOOKER, J.